UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | ) ) ) |
| Historic & Trophy Buildings Fund FCP-SIF, in judicial liquidation, | ) ) ) Chapter 15 |
| | ) Case No.: 22-11461 (DSJ) |
| Debtor. | ) ) |

**DECLARATION OF PHILIPPE THIEBAUD IN SUPPORT OF (I) THE VERIFIED AMENDED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND (II) MOTION IN SUPPORT OF VERIFIED AMENDED PETITION FOR RECOGNITION OF FOREIGN PROCEEDING AND FOR RELATED RELIEF**

I, Philippe Thiebaud, declare as follows:

1. I am an individual over 21 years of age and am competent to testify and to provide this Declaration in support of the *Verified Amended Petition for Recognition of Foreign Proceeding Under Chapter 15* (the "Verified Amended Petition") and the *Motion in Support of the Verified Amended Petition for Recognition of Foreign Proceeding and for Related Relief* (the "Motion").

2. I have personal knowledge of the statements set forth in this Declaration or such statements are based upon my review of those books and records of the Historic & Trophy Buildings Fund FCP-SIF, in judicial liquidation ("HTBF") or its former management company, Main Source S.A. ("Main Source"), that have been obtained by me.

3. I am an attorney licensed to practice before the Luxembourg Bar and a Partner with MOLITOR Avocats à la Cour SARL ("MOLITOR"), a Luxembourg-based law firm.

4. My areas of practice include banking and finance; corporate and M&A; and litigation and dispute resolution. I have a long-standing record of advising local and

international clients on corporate and private equity matters. In particular, I specialize in insolvency and corporate and fund litigation matters. Before joining MOLITOR I worked for more than 10 years with an international law firm in Luxembourg. In addition to my mandate as the judicial liquidator of HTBF, I have several mandates as a bankruptcy trustee. I earned a PhD in Private Law from the Université Panthéon-Assas Paris II in 2005 and became a member of the Luxembourg Bar in 2008. I am a member of the International Bar Association and the International Association of Restructuring, Insolvency & Bankruptcy Professionals.

  A.  **HTBF Generally.**

  5.  HTBF is a specialized investment fund constituted in the form of a mutual investment fund (*fonds commun de placement*), registered in the Luxembourg Trade and Companies Register under number K 1448 and formerly registered as a specialized investment fund ("SIF") under the amended Luxembourg law of February 13, 2007 relating to specialized investment funds (the "SIF Law") and supervised by the Luxembourg financial regulator, the Commission de Surveillance du Secteur Financier (the "CSSF"). HTBF is set up with multiple sub-funds, including the Historic Trophy & Buildings Fund USD sub-fund ("HTBF-USD"). In accordance with Luxembourg law, the assets of a sub-fund are exclusively liable for the rights of the unitholders of that sub-fund and for the rights of creditors whose claims have arisen in connection with the establishment, operation, or liquidation of that sub-fund.

  6.  In accordance with Article 4 of the SIF Law, mutual investment funds regulated by the SIF Law as SIFs are organized as co-proprietorships whose joint owners are only liable up to the amount they have committed or contributed. The joint owners of the co-proprietorship allocated to the mutual investment fund are the holders of the units issued by that mutual investment fund. These joint owners can therefore be referred to as the unitholders or as the

investors of the mutual investment fund. A SIF can alternatively be set up as an investment company with variable capital having one of the following forms: a public limited company, a partnership limited by shares, a limited partnership, a special limited partnership, a limited company, or a cooperative in the form of a public limited company. *See* Article 25 of the SIF Law.

7.  The assets of a SIF set up as a mutual investment fund are exclusively managed by a management company which must comply with certain Luxembourg regulatory requirements (*see* Article 6 of the SIF Law) until its voluntary or judicial liquidation, whichever is applicable. The investors do not have any statutory rights with respect to the management of the assets of the SIF, except as may be set forth in the management regulations of the SIF.

8.  In accordance with Article 5 of the SIF Law, a SIF shall not be liable for the obligations of the management company or of the investors, and it shall be liable only for the obligations and expenses expressly imposed upon it by its management regulations. Furthermore, the liability of the investors is limited to the amount contributed by them to the SIF, (*see* Article 4 of the SIF Law) and they are therefore not personally liable for the liabilities incurred by the SIF.

9.  Against this background, it is commonly held that in relation to the matters addressed above, the legal regime of a SIF set up as a mutual investment fund is close to that of a SIF set up as an investment company with variable capital (the mutual investment fund, for instance, has its own assets and liabilities). *See* Organismes de placement collectif, Claude Kremer and Isabelle Lebbe, Larcier, third edition, 2014, note 184, p. 94.

10. Since the opening of the judicial liquidation of HTBF, I receive its letters at 8, rue Sainte-Zithe, L-2763 Luxembourg, Grand Duchy of Luxembourg.

11. Main Source was the management company of HTBF before the opening of the liquidation of HTBF. Main Source is incorporated pursuant to the laws of Luxembourg and was last headquartered at 26, Boulevard Royal L – 2449, Luxembourg, Grand Duchy of Luxembourg. Since HTBF's founding, Main Source's registered office has been located in Luxembourg. Main Source was declared bankrupt pursuant to a judgment of the Luxembourg court dated March 11, 2022.

12. HTBF does not have any employees. When input is required, it is provided by the Bankruptcy Trustee of Main Source. Before the opening of the bankruptcy of Main Source, Main Source generally proved to be uncooperative to my requests of information and documents.

**B.     My Appointment as Liquidator of HTBF.**

13. By letter dated October 4, 2019, the CSSF (HTBF's regulator) provided notice of its "[d]ecision to remove HISTORIC & TROPHY BUILDINGS FUND from the official list of specialist investment funds" to Main Source, as the management company of HTBF at the time.

14. The CSSF's decision to withdraw HTBF from the official list of specialized investment funds resulted from HTBF's failure to appoint a new service provider to act as HTBF's central administrator and custodian bank as of October 1, 2019 following the resignation of the former service provider. HTBF's failure to appoint such service provider violated the provisions of Articles 3 and 16 of the SIF Law, which respectively provide that: "*[t]he specialised investment funds referred to in this law are considered to be situated in Luxembourg when the registered office of the management company of the common fund or that of the investment company is in Luxembourg. The central administration must be situated in Luxembourg.*"; and "*[t]he custody of the assets of the common fund must be entrusted to a depositary.*"

4

15. Article 43(2) of the SIF Law provides that an entity's registration and maintenance on the list of specialized investment funds is subject to compliance with all legislative, regulatory, or contractual provisions concerning the organization and operation of specialized investment funds as well as the distribution, placement, or sale of their securities or units.

16. Therefore, effective as of October 4, 2019, the CSSF withdrew HTBF from the official list of specialized investment funds in accordance with the provisions of Article 45(3)(k) of the SIF Law.

17. Upon the request of the CSSF to the Public Prosecutor and the subsequent application of the Public Prosecutor, by an order dated January 7, 2021 (the English translation of which shall be referred to as the "Liquidation Order"),[1] the District Court of and in Luxembourg (the "Luxembourg District Court") ordered the judicial liquidation of HTBF as of January 7, 2021 (the "Luxembourg Liquidation Proceeding").

18. By the Liquidation Order, the Luxembourg District Court appointed me as the judicial liquidator of HTBF (the "Liquidator"). *See* Liquidation Order at 4.

19. The Liquidation Order describes my powers as Liquidator as follows:

In accordance with Article 47 of the amended law of 13 February 2007, the liquidator may bring and support all actions for the fund, receive all payments, release with or without receipt, carry out all securities of the business and re-use them, create or endorse all commercial effects, compromise or jeopardize any disputes. It may dispose of the property of the fund by public tender. It may also, but only with the permission of the court, mortgage its assets, pledge them and dispose of its buildings by mutual agreement.

Pursuant to Article 47(3) of the amended law of 13 February 2007, from the date of the liquidation judgment, all movable and immovable actions, all enforcement procedures on

---

[1] A true and correct copy of the January 7, 2021 order is attached as Exhibit A to the *Amended Evidence of the Foreign Proceeding and Statements and Lists Required by Section 1515 of the Bankruptcy Code and Rule 1007(a)(4) of the Federal Rules of Bankruptcy Procedure* ("Amended Evidence of the Foreign Proceeding"). A certified English translation of the January 7, 2021 order is attached as Exhibit B (the "Liquidation Order") to the *Amended Evidence of the Foreign Proceeding*.

5

> movable and immovable property may only be followed, brought or exercised against the liquidator. The liquidation judgment orders [i.e., stops] all seizures at the request of the unsecured and non-preferred creditors on the furnitures and buildings.
>
> It follows that the fund in liquidation loses the administration of all its assets, which is entrusted to the liquidator who acts for the benefit of both the fund and the investors and creditors he represents and who has the broadest powers to carry out his mission.
>
> In this case, its powers shall be exercised both in the Grand Duchy of Luxembourg and abroad, whereas the rule of the unity and universality of the liquidation of a fund having its registered office in Luxembourg, extends in principle its effects to all the movable and immovable property of the fund in liquidation, even if these assets are located abroad.
>
> The liquidator may, to the extent it deems necessary, use the services of all representatives, agents or employees in order, in particular, to maintain and keep the books, registers and archives of HTBF, respectively to maintain and realise the assets, and take all measures it deems necessary in the interest of the liquidation.
>
> The expenses incurred for this purpose by the liquidator and its costs and fees shall be borne by the fund in liquidation and considered as administration costs to be deducted from the assets of the liquidation before any distribution of funds, subject to the application of Article 47(7) of the amended law of 13 February 2007.

*See* Liquidation Order at 3.

20.  As the court-appointed Liquidator, I therefore have complete control over the management of HTBF pursuant to Article 47 of the SIF Law and the Liquidation Order. *See* Liquidation Order at 3, 4.

21.  The Luxembourg District Court specifically authorized me, as a person having a judicial mandate of the Luxembourg District Court, to exercise my powers both in the Grand Duchy of Luxembourg and abroad. *See* Liquidation Order at 3, 4.

22.  The Liquidation Order also authorized me, as Liquidator, in accordance with Article 47 of the SIF Law, to among other things, bring and support actions, receive payments, settle or compromise disputes, and sell assets (the sale of real estate being subject to the prior authorization of the Luxembourg District Court). *See* Liquidation Order at 3, 4.

23.     I am subject to the supervision of the Luxembourg District Court, my supervisory judge being Judge Muriel Wanderscheid.  *See* Liquidation Order at 4.

C.     **My Notices to HTBF's Investors and Other Creditors.**

24.     I provided notice of the Luxembourg Liquidation Proceeding and my appointment as Liquidator to the respective legal counsels of the investors of HTBF-USD; specifically, I provided such notice to FONDO MEGAS on January 12, 2021 and to FONDO FENICE on February 25, 2021.  I also provided notice of the Luxembourg Liquidation Proceeding and my appointment as Liquidator to the remaining investors of HTBF, namely FONDO DONATELLO and FONDO AIDA, on January 19, 2021.

25.     I informed the bondholders of sub-fund HTBF-EUR of the Luxembourg Liquidation Proceeding and my appointment as Liquidator on January 19, 2021.  I also provided such notice to the service providers of HTBF whose services are required by law, namely the custodian bank and the independent auditor, on January 8, 2021 and January 11, 2021, respectively.  Thereafter, I contacted all remaining creditors of HTBF.  I have now provided notice of the Luxembourg Liquidation Proceeding and my appointment as Liquidator to all known creditors of HTBF, all of whom have now filed proofs of claim in the Luxembourg Liquidation Proceeding.

26.     In addition, on or around January 10, 2021, an excerpt of the Liquidation Order was published in two Luxembourg newspapers, providing, in relevant part, as follows:

> [B]y judgment dated 7 January 2021, the district court in and of Luxembourg, sixth chamber, sitting in commercial matters, ordered under article 47 of the amended law of 13 February 2007 relating to specialized investment funds the dissolution and liquidation of the specialized investment funds set-up in the form of a mutual investment fund:
>
> HISTORIC & TROPHY BUILDINGS FUND FCP-SIF, registered in the commercial register of Luxembourg under number K1448.

The same judgment appointed as supervisory judge Madame Muriel WANDERSCHEID, judge at the District Court in Luxembourg, and as liquidator Maître Philippe THIEBAUD, lawyer, residing in Luxemburg.

It orders creditors to declare the amount of their claims at the registry of the Sixth Chamber of this Tribunal before January 28, 2021.

27.     I also provided written updates to all known investors by letters dated July 9, 2021 to update them on my efforts as Liquidator.  I further updated by email FONDO MEGAS, through its legal counsel, on January 6, 2022, which in turn updated FONDO FENICE.

28.     The person having lodged the most significant proof of claim in respect of the sub-fund HTBF-USD is Main Source for a total of USD $4,888,544.34.  This proof of claim has not been verified in the liquidation proceedings as of today.

D.     **The 2015 Restructuring.**

29.     HTBF is set up with multiple sub-funds, including the HTBF-USD sub fund. HTBF's management company, Main Source, initially formed the HTBF-USD sub fund for the purpose of enabling HTBF to indirectly make significant investments in real property assets in the United States.  Prior to July 1, 2015, HTBF-USD had full control of these U.S. real estate interests because it held a controlling majority interest in Michelangelo Real Estate Corporation ("MREC"), the special purpose entity that held such interests.

30.     On September 30, 2013, Main Source, on behalf of HTBF-USD as shareholder of MREC, and Sorgente Group Limited entered into a reorganization agreement (the "Reorganization Agreement"), which was signed by Valter Mainetti as president of Main Source and by his daughter Veronica Mainetti as president of Sorgente Group Limited.  In accordance with the Reorganization Agreement, on July 1, 2015, Main Source, on behalf of HTBF-USD, Sorgente Group Limited, and Sorgente Asset Management Inc., entered into a limited partnership agreement (the "Limited Partnership Agreement").  Main Source, Sorgente Group

8

Limited, and Sorgente Asset Management Inc. are all part of the Sorgente Group. It is my understanding that, at the time of the execution of the Limited Partnership Agreement, Valter Mainetti was the president of the board of directors of Main Source, his wife Paola Alunni Mainetti was the president of Sorgente Group Limited, and their daughter Veronica Mainetti was the president of Sorgente Asset Management Inc.

31. The Limited Partnership Agreement, in conjunction with certain contemporaneously executed deeds of contribution and stock subscription agreement, resulted in the distancing of HTBF from MREC and thus from its interests in U.S. real estate interests. Specifically, these documents (i) established Michelangelo Real Estate Fund LP ("MREF") to take control of MREC and (ii) delegated the management, control, and operation of MREF exclusively to Sorgente Asset Management Inc. as managing general partner. Following the effectuation of these transactions, HTBF-USD, as a general and limited partner of MREF, had no management role, no power or control, no authority to act on behalf of MREF in any way, and no voting rights related to any matter except for changes with respect to the Limited Partnership Agreement. The term of the Limited Partnership Agreement was set at December 31, 2065.

32. In August 2015, Main Source completed the restructuring operation (the "2015 Restructuring") by approving certain changes to HTBF's management regulations, including, among other things, the extension of the fund's original 15-year maximum duration by an additional maximum of 15 years (i.e., to 2045), and the removal of shareholders' right to replace the management company.

33. As a result of the 2015 Restructuring: (i) MREF was inserted between HTBF-USD and MREC; (ii) the control of MREC was entrusted entirely to MREF; (iii) MREF was controlled by Sorgente Asset Management Inc.; and (iv) HTBF-USD's original interest in

MREC was transformed into an equity interest in MREF, without voting rights and with privileged economic rights but with what appears to be substantially decreased economic value due to their characteristics.

### E.     Unauthorized Payments and Missing Sale Proceeds.

34.     As set forth above, HTBF is set up with multiple sub-funds, including HTBF-USD. FONDO MEGAS and FONDO FENICE are the shareholders of HTBF-USD.

35.     HTBF-USD is a general and limited partner of MREF, which is governed by a Delaware law governed limited partnership agreement dated July 1, 2015 by and between, among others, HTBF-USD as a general and limited partner and Sorgente Asset Management Inc. as managing general partner. MREF's principal place of business is 594 Broadway, Suite 205, New York, NY.

36.     MREF owns all the shares of MREC, which in turn owns all or part of the shares of certain subsidiaries which own real estate assets located in the Manhattan Borough of New York, New York, United States. MREC's principal place of business is 805 Third Avenue, New York, NY. MREC previously owned the Clock Tower Building in Santa Monica, through its subsidiary SAMO CLOCK TOWER, LLC. In March 2019, SAMO CLOCK TOWER, LLC sold the Clock Tower Building, receiving approximately $30 million of net proceeds ("the Clock Tower Sale").

37.     In an April 2019 letter to HTBF's investors, Main Source announced that the proceeds from the Clock Tower Sale would be used to make a $17 million payment to the investors, a $4.9 million payment to Main Source for management fees, and to make payments for certain additional expenses.

38. On October 4, 2019, the CSSF notified HTBF of its decision to remove HTBF from the official list of specialized investment funds pursuant to the SIF Law. In accordance with Article 46 of the SIF Law, a decision by the CSSF to remove a specialized investment fund from the official list of such funds shall automatically entail, from the date of notification and at the specialized investment fund's expense, until the date on which the decision becomes final, the suspension of all payments by the specialized investment fund and a prohibition, under penalty of nullity, on carrying out any acts other than precautionary acts, unless authorization from the supervisory commissioner (i.e., the CSSF) is obtained. Once such decision from the CSSF becomes final, all actions and decisions from the specialized investment fund must be approved by the CSSF pursuant to Article 46 of the SIF Law. Accordingly, any acts taken by HTBF following its October 4, 2019 notification of the CSSF's decision until the withdrawal decision became definitive, on or around November 4, 2021, had to be precautionary acts only, unless authorized by the CSSF, and any subsequent acts until the January 7, 2021 initiation of the Luxembourg Liquidation Proceeding had to be authorized by the CSSF.

39. Based on my investigation, it appears that on or around November 4, 2019, MREC effectuated certain transfers to the investors (the "Transfers to Investors"), consisting of fund transfers in the aggregate amount of approximately $10 million to HTBF-USD's two investors, purportedly to make a partial repayment of the MREC Loan at the direction of HTBF-USD and to make, at the same time, a distribution from HTBF-USD to the investors. Main Source had told the investors that they would be paid $17 million in the aggregate but instead they received only $10 million in the aggregate. To date, neither the investors nor I have been able to determine what happened to the $7 million difference. In any event, the Transfers to Investors had not been authorized by the CSSF, as was required.

11

40.     Having been effectuated purportedly for and on behalf of HTBF-USD without the consent of CSSF at a time when such consent was required, the Transfers to Investors violated the SIF Law, thus rendering the payments void.

41.     Furthermore, I recently acquired knowledge that, on March 20, 2019, additional funds in the amount of $4.9 million had been transferred by MREC and MREF to Main Source (the "Additional Transfers").  The Additional Transfers, which were primarily used to make payments to affiliates of Main Source, do not appear to be documented or approved at the level of HTBF.  The Clock Tower Sale proceeds should have been transferred to HTBF's custodian bank but I have not found any evidence this ever occurred.

42.     Therefore, the Additional Transfers appear to constitute an illegitimate distribution of HTBF's assets, and hence are void and of no effect.

**F.      Unauthorized Loan Amendment.**

43.     On January 1, 2013, HTBF-USD, as lender, and MREC, as borrower, entered into a New York law governed revolving loan agreement providing for a revolving loan of up to $80 million (the "MREC Loan"), which was amended by an amendment agreement dated January 1, 2017.

44.     On October 4, 2019, the CSSF notified HTBF of its decision to remove HTBF from the official list of specialized investment funds pursuant to the SIF Law.  As set forth above, any acts taken by HTBF following its October 4, 2019 notification of the CSSF's decision until the withdrawal decision became definitive, on or around November 4, 2021, had to be precautionary acts only, unless authorized by the CSSF, and any subsequent acts until the January 7, 2021 initiation of the Luxembourg Liquidation Proceeding had to be authorized by the CSSF.

45. On November 18, 2020, documents titled "Amendment to Loan Agreement" and "Amendment to Revolving Loan Note" were purportedly executed by HTBF-USD and MREC (the "Amendment Documents"). The Amendment Documents purported to extend the maturity date of the MREC Loan – which was to expire on December 31, 2020 pursuant to the Amendment Agreement – to December 31, 2022.

46. The Amendment Documents, executed by Mario Gazzola in his capacity as President of MREC and Valter Mainetti in his capacity as board member of Main Source, in its capacity as management company of HTBF, acting for HTBF-USD, to purportedly extend the maturity date of the MREC Loan (which was to expire on December 31, 2020) did not constitute a precautionary act, and, in any case, would have required the prior approval of the CSSF. I have been informed by the CSSF that entry into the Amendment Documents was not authorized by the CSSF.

47. The Amendment Documents were executed in violation of the SIF Law, thus rendering them void. The Amendment Documents are not binding on HTBF-USD and, accordingly, the MREC Loan expired on December 31, 2020.

48. On or around July 19, 2021, I wrote to MREC to (a) inform it that the purported Amendment Documents are a legal nullity and that the MREC Loan was past due; (b) that certain payments made by MREC were void and of no effect with regard to the liabilities of MREC and thus avoidable; (c) request information regarding the previous payments and purported amendments; and (d) demand repayment of the MREC Loan, and payment of all interest due on such loan.

49. To date, MREC has failed to provide the requested information regarding the previous payments and purported amendments, and has failed to repay the MREC Loan and the interest due on such loan.

### G. Initiation of the Arbitration Proceeding.

50. After the filing of the initial *Verified Chapter 15 Petition for Recognition of a Foreign Proceeding* [Dkt. No. 1] and accompanying documents, I became aware that on or around December 10, 2020, Sorgente Asset Management Inc. and Sorgente Lux Holding Sàrl[2] initiated an arbitration proceeding (the "Arbitration Proceeding") against Main Source in trust for HTBF-USD before the International Centre for Dispute Resolution in New York, seeking a declaratory judgment with respect to ownership of MREF. As set forth above, on January 7, 2021, the Luxembourg District Court appointed me as Liquidator of HTBF. Effective January 7, 2021, I had complete authority over the management of HTBF pursuant to Article 47 of the SIF Law and the Liquidation Order. Accordingly, as of January 7, 2021, Main Source no longer had any management authority over HTBF and any actions it may have taken thereafter on behalf of HTBF are null and void. Furthermore, pursuant to Article 46 of the SIF Law, any actions that Main Source may have taken on behalf HTBF with respect to the Arbitration Proceeding between the December 10, 2020 initiation of the proceeding until January 6, 2021, shall also be null and void because any such actions would have required the approval of the CSSF and such approvals were never obtained or even sought.

51. Main Source never informed me of the Arbitration Proceeding. Main Source was declared bankrupt pursuant to a judgment of the Luxembourg court dated March 11, 2022. I discovered the existence of the Arbitration Proceeding while reviewing documents that the

---

[2] Based on information I have received, I understand that in 2021 Sorgente Lux Holding Sàrl transferred its seat to Italy and became Sorgente Lux Holding Srl, which thereafter changed its name to Lux Mainsource S.R.L.

Bankruptcy Trustee of Main Source provided to me. On November 10, 2022 I wrote to the International Centre for Dispute Resolution to inform it of my role as Liquidator of HTBF and Main Source's bankruptcy and to request further information regarding the Arbitration Proceeding. I have not yet received a substantive response.

H. **Outstanding Information Requests.**

52. Upon my appointment as Liquidator in January 2021, I immediately began requesting documentation relating to HTBF, including documentation relating to HTBF-USD, from relevant parties, including from the board of directors of Main Source (the "<u>Main Source Board</u>"). Despite repeated requests to the Main Source Board for documentation relating to HTBF-USD, including documents relating to agreements and payments, I have only been provided with a very limited number of documents by Main Source. Given the failure of the Main Source Board and others to provide sufficient documentation, I was forced to seek documents from HTBF's former auditor, which was able to provide me with certain documents. Upon his appointment, the Bankruptcy Trustee of Main Source provided me access to the file he received from Main Source. This allowed me to discover the Additional Transfers and the Arbitration Proceeding, which Main Source had hidden from me.

I. **The Chapter 15 Case.**

53. By filing the Amended Verified Petition and the Motion, I seek the assistance of the U.S. courts in my efforts to (i) obtain further documents and information relating to HTBF-USD and MREC, and (ii) locate and recover HTBF's assets in furtherance of my duties as Liquidator of HTBF to liquidate HTBF's assets and repay its creditors according to their priorities. I anticipate that the claims administration and distribution process will take place in

Luxembourg as part of the Luxembourg Liquidation Proceeding and my liquidation of HTBF's assets.

54. I have reviewed Exhibit A to the *Amended Evidence of the Foreign Proceeding*. The exhibit is a true and correct copy of the original document.

55. I have reviewed Exhibit B to the *Amended Evidence of the Foreign Proceeding*. The exhibit is a certified English translation of the document set forth at Exhibit A.

**J.  The Retainer.**

56. Prior to filing the Verified Amended Petition, I caused a retainer in the amount of twenty-five thousand U.S. dollars ($25,000) to be wire transferred to an account in the name of Brown Rudnick LLP in New York, New York. Brown Rudnick LLP holds such funds as a security retainer.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: November 15, 2022     By: _____
*Philippe Thiebaud, as Judicial Liquidator and Foreign Representative of Historic & Trophy Buildings Fund FCP-SIF, in judicial liquidation*

64891000 v4-WorkSiteUS-036893/0001

16